UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

UNITED STATES OF AMERICA

   - against -

RICHARD ROJAS

               Defendant.

----------------------------------------X

09 Cr. 479 (RWS)

SENTENCING
OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6 8 10

**Sweet, D.J.**

On March 2, 2010, Richard Rojas ("Rojas" or the
"Defendant") allocuted to, one count of conspiracy to commit
access device fraud, one count of conspiracy to possess access
device-making equipment, and one count of conspiracy to effect
transactions with one or more access devices issued to another
person to receive in excess of $1,000, in violation of 18 U.S.C.
§§ 1029(a)(1), (4), (5), (b)(1) and 2. For the reasons set forth
below, Rojas will be sentenced to three years' probation with a
special condition of five months' home confinement.   He also
will be required to pay a special assessment of $300.   An order
of restitution shall be delayed for up to 90 days pending receipt
of necessary identifying information from the Government.

1

**Prior Proceedings**

Indictment 09 Cr 479 (RWS) was filed in the Southern District of New York on May 11, 2010.  Count One charges that from January 2009 through February 2009, in the Southern District of New York and elsewhere, Defendant produced and sole counterfeit credit cards.  Count Two charges that from January 2009 through February 2009, in the Southern District of New York and elsewhere, Defendant possessed devices used to make credit cards.  Count Three charges that from January 2009 through February 2009, in the Southern District and elsewhere, Defendant used another individual's credit card account to obtain goods in amounts totaling more than $1,000, without authorization from the account holder.[1]

Defendant's sentencing is currently scheduled for June 8, 2010.

---

[1] Count Four, to which Rojas has not entered a plea and which the PSR does not incorporate in determining the proposed sentence, charged that he possessed and used names and account numbers of the other individuals to commit access device fraud as charged in Count One of the Indictment.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in

United States v. Booker, 543 U.S. 220 (2005), and the Second

Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d

Cir. 2005), the sentence to be imposed was reached through

consideration of all of the factors identified in 18 U.S.C. §

3553(a), including the advisory Sentencing Guidelines (the

"Guidelines") established by the United States Sentencing

Commission.  As the Supreme Court explained in Gall v. United

States, 552 U.S. 38 (2007):

> [A] district court should begin all sentencing
> proceedings by correctly calculating the
> applicable Guidelines range.  As a matter of
> administration and to secure nationwide
> consistency, the Guidelines should be the starting
> point and the initial benchmark.  The Guidelines
> are not the only consideration, however.
> Accordingly, after giving both parties an
> opportunity to argue for whatever sentence they
> deem appropriate, the district judge should then
> consider all of the § 3553(a) factors to determine
> whether they support the sentence requested by a
> party. In so doing, he may not presume that the
> Guidelines range is reasonable.  He must make an
> individualized assessment based on the facts
> presented.

Id. at 49-50 (internal citation and footnote omitted).  Thus, in

addition to analysis of the Guidelines, the sentence imposed here

results from consideration of:

(1) the nature and circumstances of the offense

3

and the history and characteristics of the
defendant;

(2) the need for the sentence imposed-

    (A) to reflect the seriousness of the
    offense, to promote respect for the law,
    and to provide just punishment for the
    offense;

    (B) to afford adequate deterrence to criminal
    conduct;

    (C) to protect the public from further crimes
    of the defendant; and

    (D) to provide the defendant with needed
    educational or vocational training,
    medical care, or other correctional
    treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range
established for-

    (A) the applicable category of offense
    committed by the applicable category of
    defendant as set forth in the guidelines
    . . . ;

(5) any pertinent policy statement . . . [issued
by the Sentencing Commission];

(6) the need to avoid unwarranted sentence
disparities among defendants with similar records
who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims
of the offense.

18 U.S.C. § 3553(a).  A sentencing judge is permitted to find all

the facts appropriate for determining a sentence, whether that

sentence is a so-called Guidelines sentence or not.  See Crosby,

397 F.3d at 111.

4

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 570 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Defendant**

The Court adopts the facts set forth in the Probation Department's Presentence Investigation Report ("PSR") with respect to Rojas's personal and family history.

**The Offense Conduct**

The following description draws on the PSR.  The specific facts of the underlying conduct are adopted as set forth in that report.

This case originated with a telephone call on February 18, 2009, between agents and the case agent regarding information in reference to a possible counterfeit manufacturing plant

5

located in Bronx, New York.  Another agent advised the case agent
that on February 18. 2009, U.S. Customs and Border Protection
("CBP") officers at the Newark International Airport ("Newark"),
New Jersey, intercepted a UPS package that was being sent to
Daisy Velez ("Velez"), Defendant's girlfriend, at an address in
the Bronx.  The package contained 400 silver and gold bank credit
cards complete with magnetic stripe and signature block.  The
agent advised that the UPS package was shipped from DigitalID, a
company located in Stockport, UK, that manufactured blank credit
cards and printers.

Continuing on February 18, 2009, an agent obtained the
United Parcel Service ("UPS") package from a CBP officer at
Newark and subsequently turned over chain of custody of the
package to the case agent.

On the same date, the case agent conducted record check
for the target address.  AutoTrack and Lexis Nexis checks
revealed Velez and Rojas as being the registered occupants of the
address.

On the same date, the case agent drove by the target
address and noticed a Black Lincoln Navigator parked in front of
the residence; records checks indicated that the vehicle is

registered to Rojas.

Continuing on the same date, the case agent spoke to a UPS Fraud Investigator.  The UPS Fraud Investigator manipulated the UPS online tracking system to show the package as being in-transit and rescheduled for delivery on the next business day. The UPS Fraud Investigator manipulated the UPS online tracking system to show the package as being in-transit and rescheduled for delivery on the next business day.  The UPS Fraud Investigator ran a database query for recent packages shipped to the target address and discovered that a shipment was delivered to Velez at the same address to which the intercepted package was being sent on February 6, 2009.  The UPS Fraud Investigator advised the case agent that the package was shipped from Dingword Inc. located in Toronto, Canada.

On February 19, 2009, the case agent discovered via internet searches that Dingword Inc. is a company that sells printers, embossers, and various other products used to manufacture credit cards.

Continuing on the same date, the case agent contacted the owner of Dingword Inc. The owner verified that he shipped a hot foil stamping machine to Velez at the target address.

7

Continuing on the same date, an agent spoke with an
Ebay/Paypal Fraud Investigator.  The Ebay/Paypal Fraud
Investigator performed a database query and discovered that
numerous items related to credit card manufacturing and access
device fraud had been shipped to Velez and Rojas at the target
address in the past several weeks.

Continuing on the same date, a federal search warrant
was authorized to be drafted for the target residence, located at
the target address.

On February 20, 2009, federal agents executed a search
warrant for the target residence in the Bronx.  Both Rojas and
Velez were present in the residence at the time the search
warrant was served.  Rojas voluntarily signed a consent to search
his residence, electronic media, and vehicles.

Continuing on the same date, Rojas was interviewed by
agents.  Rojas admitted to being involved in counterfeit credit
card manufacturing and stated that the products he used to make
counterfeit credit cards were located at his friend's house, from
which he volunteered to retrieve the manufacturing tools and did
so, turning them over to the agents.  The following items were

8

turned over to the agents: one magnetic stripe writer/reader/encoder, one card embosser, one computer mini-tower, one credit card printing machine, twenty-nine counterfeit credit cards, approximately eighteen hundred blank PVC plastic cards, one hot foil stamping machine, and three rolls of hot tinting foil. The items uncovered in the search of the targets' residence and vehicle, along with the items voluntarily turned over to agents constitute evidence, fruits, and instrumentalities of fraud and related activity in connection with access device fraud. The search resulted in a counterfeit access device manufacturing plant.

Rojas provided a full written statement, on a form that had Miranda warnings written on it, confessing to his involvement, and ownership of the counterfeit credit card manufacturing plant. Additionally, he described other individuals involved in the scheme to manufacture and encode counterfeit credit cards.

In the written statement, Rojas stated that a co-conspirator ("CC-1") introduced him to other co-conspirators ("CC-2" and "CC-3"), sometime in January. CC-2 wanted Rojas to make counterfeit credit cards for him. CC-2 agreed to pay Rojas $200.00 for each card. CC-2 and Rojas would meet at a Getty Gas

station located at the corner of Bronx River Avenue and
Westchester Avenue, Bronx, New York.  Rojas stated that CC-2
would give him the last four digits he wanted embossed on the
counterfeit credit cards.  Rojas would then take the numbers back
to his house and print and emboss the cards.  He would them meet
up with CC-2 at the same Getty gas station, and CC-2 would pay
him for the cards.  Rojas admitted that he has made approximately
10-15 cards for CC-2.  Rojas stated that one of the individuals
who was present with CC-2 had a card writer and encoded the
numbers on the cards.

Continuing on February 20, 2009, the case agent
inventories all evidence collected as a result of the search
warrant, and consent searches.  Several of the counterfeit credit
cards contained fraudulently encoded account numbers.  The case
agent contacted a CitiGroup Fraud Investigator.  The CitiGroup
Fraud Investigator indicated that CitiBank Account number 4271-
3829-0953-1655, issued to Richard J. Glosman had been reported as
closed due to fraudulent activity.  The CitiGroup Fraud
Investigator stated that there were approximately $4,500 in fraud
loss reported on the card and provided a copy of all fraudulent
transactions.

The case agent discussed the fraudulent transactions

10

with Rojas who voluntarily admitted making most of the fraudulent charges. Rojas stated that he used his credit card reader/writer to capture one of the encoded numbers that CC-2 gave to him and then transferred it to a counterfeit card that he made for himself. Rojas then went out and used the card for fraudulent financial gain at several stores in the New York area.

Additionally, Capital One Account number 4003-4470-0073-7397 was found to be encoded on one of the fraudulent cards made by Rojas. The case agent contacted a Capital One Fraud Investigator. The Capital One Fraud Investigator informed the agent that the account was closed due to fraudulent activity, and there was one fraudulent charge for $1,956.15 that appeared on the card from a purchase made at Circuit City in New York, New York. Rojas was questioned as to the fraudulent charge made using the Capital One Account and he denied making the purchase.

On February 23, 2009, subpoenas were requested for Rojas's Ebay account information and CC-2's Sprint/Nextel phone records.

On February 24, 2009, the case agent reviewed the fraudulent charges made by Rojas using the stolen CitiBank Account number. One of the attempted fraudulent charges was for

11

an airline ticket issued to an individual through JetBlue Airways. A representative from JetBlue Airways Legal Department provided the agent with all reservation records associated with the fraudulent credit card transaction along with three other credit card numbers that were fraudulently used by the individual in an attempt to purchase airline tickets. One of the attempted credit card transactions was made using American Express ("AmEx") Account number 3715-6671870-7004. The case agent contacted an AmEx Fraud Investigator who informed that agent that the account was closed due to fraudulent activity.

Continuing on the same day, the case agent contacted a regional investigator from Chase Bank who stated that Chase Account number 5401-6830-3451-5954, which was used in an attempt by the individual to purchase a JetBlue Airline ticket, was closed due to fraudulent activity and that there were two other fraudulent transactions associated with this account number that occurred at El Aguila Bar in Bronx, New York, and Macy's Herald Square in New York, New York. Rojas was questioned as to the fraudulent transactions and denied making the purchases.

Rojas is being held accountable for a loss amount of between $30,000 and $70,000.

12

## The Relevant Statutory Provisions

For Count One, there is a maximum term of imprisonment of five years, pursuant to 18 U.S.C. §§ 1029(a)(1), (b)(1), and (b)(2).  For Counts Two and Three, there is a maximum term of imprisonment of seven-and-a-half years per count, pursuant to 18 U.S.C. §§ 1029(a)(4), (a)(5), (b)(1) and (b)(2).  If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

Rojas is eligible for not less than one nor more than five years' probation by statute, pursuant to 18 U.S.C. § 3561(c)(1).

The maximum fine is $250,000 pursuant to 18 U.S.C. § 3571.  Pursuant to 18 U.S.C. § 3013, a special assessment of $100 per count is mandatory.

Full restitution to the victims is required under 18 U.S.C. § 3663A and 18 U.S.C. 3664.  At time of writing, restitution information was still being awaited.

13

As a result of committing the offenses alleged in
Counts One, Two, and Three of the Indictment, Rojas shall forfeit
to the United States, pursuant to 18 U.S.C. § 1963(a)(1), (a)(2),
and (a)(3), all property real and personal, involved in the
offense or traceable to such property.  If any of the property
subject to forfeiture cannot be located upon the exercise of due
diligence, ahs been transferred to a third party, has been placed
beyond the Court's jurisdiction, has been substantially
diminished in value, or has been commingled with other property,
it is the intention of the Government, pursuant to 18 U.S.C. §
982(b), to seek forfeiture of any other property of the Defendant
up to the value of the forfeitable property.

## The Guidelines

The November 1, 2009 edition of the United States
Sentencing Commission Guidelines Manual has been used in this
case, pursuant to § 1B1.11(a).

Counts One, Two, and Three are grouped together,
pursuant to U.S.S.G. § 3D1.2(d), because the offense level is
determined largely on the basis of the total amount of harm or
loss or some other measure of aggregate harm, and because the
offense behavior is ongoing and continuous in nature and the

14

offense guideline is written to cover such behavior.

Because Counts One, Two, and Three are grouped pursuant to U.S.S.G. § 3D1.2(d), the offense level applicable to the group is the offense level corresponding to the aggregated quantity of loss.  See U.S.S.G. § 3D1.3(b).

The sentencing guideline applicable to the offenses charged in Counts One, Two and Three is U.S.S.G. § 2B1.1.

Accordingly, the applicable offense level is 6.

Pursuant to U.S.S.G. §2B1.1(b)(1)(D), because the intended loss amount is more than $30,000 but not more than $70,000, the offense level is increased by six levels.  See § 2B1.1, Application Note 3(F)(i).

Pursuant to U.S.S.G. § 2B1.1(b)(10), because the offenses involved the possession or use of device-making equipment; the production or trafficking of an unauthorized access device or counterfeit access device; the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification; and the possession of five or more means of identification that

15

unlawfully were produced from, or obtained by the use of, another
means of identification, the offense level is increased by two
levels.

The Defendant has clearly demonstrated acceptance of
his responsibility, to the satisfaction of the Government,
through his allocution and subsequent conduct prior to the
imposition of sentence, a two-level reduction is warranted,
pursuant to U.S.S.G. § 3E1.1(a).

Rojas has no known criminal convictions.  Therefore, he
has zero criminal history points and a Criminal History Category
of I.

Based on a total offense level of 12 and a Criminal
History Category of I, the Guidelines range for imprisonment is
10 to 16 months.

The Guidelines range for a term of supervised release
is at least two years but not more than three years, pursuant to
§ 5D1.2(a)(2).  If a sentence of imprisonment of one year or less
is imposed, a term of supervised release is not required but is
optional, pursuant to § 5D1.1(b).  Supervised release is required
if the Court imposes a term of more than one year or when

16

required by statute, pursuant to §5D1.1(a).

Because the applicable guideline range is in Zone C of
the Sentencing Table, Rojas is not eligible for probation,
pursuant to §5B1.1, Application Note 2.

The fine range for the instant offense is from $3,000
to $30,000, pursuant to § 5E1.2. Subject to Defendant's ability
to pay, in imposing a fine, the Court shall consider the expected
costs to the Government of any imprisonment, probation, or
supervised release pursuant to § 5E1.2(d)(7). The most recent
advisory from the Administrative Office of the United States
Courts suggests a monthly cost of $2,270.93 to be used for
imprisonment, a monthly cost of $317.32 for supervision, and a
monthly cost of $2,063.19 for community confinement.

Pursuant to § 5E1.1(a)(1), in case of an identifiable
victim, the Court shall enter a restitution order for the full
amount of the victim's loss if such order is authorized under 18
U.S.C. § 3663A.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court

17

also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.   Pursuant to all of the factors, it is determined that a sentence below the Guidelines range is warranted in the instant case.   The instant offense occurred over the course of only a few months.   When Rojas was confronted by law enforcement officials, he cooperated immediately and described in details, both orally and in writing, the credit card scheme, the co-conspirators, and the location of the machines used to make the counterfeit cards.   The offense represents Rojas's first criminal conviction.   Rojas, the father of two young children, is gainfully employed in the construction industry while enrolled part-time in college.   In addition Rojas has been in compliance with the conditions of his bail.   Finally, a home visit conducted by his probation officer verified that the address of record is an appropriate living environment, and therefore appropriate for home confinement.   A non-custodial sentence would allow him to continue with work and school, as well as care for his family.

**The Sentence**

18

For the instant offense, Rojas will be sentenced to three years probation with a special condition of five months' home confinement.

Rojas is to report to the nearest United States Probation Office within seventy-two hours of the imposition of this sentence. It is recommended that he be supervised by the district of his residence.

As mandatory conditions of his probation, Rojas shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; (4) cooperate in the collection of DNA as directed by the probation officer.

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, for offenses committed after September 13, 1994, the court shall require that all offenders on probation, parole, or supervised release submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §

19

3563(a)(5) and § 3583(d).

Defendant shall refrain from any unlawful use of a controlled substance. He shall submit to one drug test within fifteen days of placement on probation and at least two unscheduled drug tests thereafter, as directed by the probation officer.

Furthermore, the standard conditions of supervision (1-13) shall be imposed with the additional special conditions as follows:

Rojas shall comply with the conditions of home confinement for a period of five months. During this time he will remain at his place of residence except for employment and other activities approved by his probation officer. He shall maintain a telephone at his place of residence without call forwarding, a modem, caller ID, call waiting, or portable cordless telephones for the above period. At the direction of his probation officer, he shall wear an electronic monitoring device and follow electronic monitoring procedures specified by his probation officer. Home confinement shall commence on a date to be determined by the probation officer. Rojas shall pay the costs of home confinement on a self-payment or copayment basis as

20

directed by the probation officer.

Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.  A special assessment of $300, payable to the United States, is mandatory and shall be due immediately.

An Order of Restitution will be delayed for up to 90 days after the sentence is imposed in anticipation of receiving the necessary identifying information from the Government pursuant to the provisions of 18 U.S.C. § 3663(d)(5).

Rojas shall forfeit any property and proceeds derived from the offense to the United States.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for June 8, 2010.

It is so ordered.

New York, NY
June  8  , 2010

_____
ROBERT W. SWEET
U.S.D.J.